UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
STEPHEN COHEN,                )
                              )
           Plaintiff,         )
                              )      CIVIL ACTION
      v.                      )      NO. 10-11497-WGY
                              )
MICHAEL J. ASTRUE,            )
Commissioner, Social Security )
Administration,               )
                              )
           Defendant.         )
                              )
_____)
```

MEMORANDUM OF DECISION

YOUNG, D.J.                                   March 30, 2012

## I.   INTRODUCTION

Stephen Cohen ("Cohen") brings this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("the Commissioner) that denied his claims for Social Security Disability Insurance Benefits ("SSDI") and Supplemental Security Income ("SSI").

## II.  BACKGROUND

Cohen is forty-five years old and holds a General Equivalency Degree.  Admin. R. 27.  Cohen has worked as a case aide, construction worker, material handler, cleaner, pantry

goods maker, and food deliverer.  Id. at 16.

Cohen applied for SSDI and SSI on October 6, 2008, claiming disability as of July 31, 2008.  Id. at 160.  Cohen alleged impairments including hip pain, back pain, high blood pressure, anxiety, depression, and bipolar disorder.[1]  Id. at 191, 232. The Commissioner denied Cohen's claim on January 5, 2009.  Id. at 73.  On reconsideration, Cohen requested a hearing before an Administrative Law Judge (the "hearing officer"), which was held on February 26, 2010.  Id. at 25.  In a decision issued on March 25, 2010, the hearing officer concluded that Cohen was not disabled within the meaning of the Social Security Act.  Id. at 4.  That decision became final on July 2, 2010, as the Decision Review Board failed to complete its review on time.  Id. at 1. On September 1, 2010, Cohen commenced the present action in this Court, seeking judicial review of the hearing officer's decision. Compl., ECF No. 1.  Cohen contends that the decision was not supported by substantial evidence for two reasons.  Mem. Law Supp. Pl.'s Mot. Reverse Decision Comm'r Soc. Sec. Admin. ("Pl.'s Mem.") 2, ECF No. 9.  First, Cohen argues that the hearing officer ignored the opinion of Ira Hymoff, Ph.D. ("Dr. Hymoff"), a medical expert who testified at the hearing, and should have granted disability based on his opinion.  Id. at 10-11.  Second,

---

[1] The Court omits an in depth discussion of Cohen's medical history and the evidence supporting the hearing officer's decision as it would be inapposite to the legal issues at hand.

2

Cohen contends that the hearing officer erred by failing to pose a "complete hypothetical question" to the vocational expert. Id. at 2. Cohen requests that this Court reverse the Commissioners decision, or in the alternative, remand to the agency for errors of law. Id.

**III. LEGAL STANDARD**

    **A.    Standard of Review**

Under 42 U.S.C. § 405(g), this Court has the power to affirm, modify, or reverse the Commissioner's decision. This Court must make its decision based on the pleadings and transcript of the record before the Commissioner, and "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); see Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). This Court must "uphold the [Commissioner's] findings if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriquez v. Secretary of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). It is the role of the Commissioner to draw factual inferences, make credibility determinations, and resolve conflicts in the evidence, and this Court will not perform such tasks when reviewing the record. Id.

**B. Social Security Disability Standard**

An individual is disabled if he is unable to "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration uses a five-step sequential analysis to determine whether a claimant is disabled, under which the hearing officer must determine: 1) whether the claimant is engaged in substantial gainful activity; 2) whether the claimant has a severe impairment; 3) whether the impairment meets or medically equals an impairment listed under 20 C.F.R. Part 404, Subpart P, Appendix 1; 4) whether the claimant has the residual functional capacity to perform his past relevant work; and 5) whether the impairment prevents the claimant from doing any other work considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520

The claimant bears the burden in the first four steps to show that he is disabled within the meaning of the Social Security Act. Goodermote v. Secretary of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). Once the claimant has established that he is unable to return to his former employment, the burden shifts to the Commissioner at the fifth step to prove

4

that the claimant is able to perform suitable jobs that exist in significant numbers in the national economy.  Id.

IV.  **THE HEARING OFFICER'S DECISION**

After a hearing on February 26, 2010, the hearing officer rendered her decision on March 25, 2010.  Admin. R. 4-22.  At step one, the hearing officer concluded that Cohen had not engaged in substantial gainful activity since July 31, 2008.  Id. at 9.  At step two, she concluded that Cohen's lumbar degenerative disc disease, bipolar disorder, personality disorder, panic disorder, and substance abuse in partial remission, constituted severe impairments.  Id. at 9-10.  At step three, the hearing officer concluded that Cohen's impairments did not meet, or medically equal, any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 10.  The hearing officer went on to conclude at step four that Cohen could not perform any past relevant work.  Id. at 16-17.  Finally, relying on a vocational expert's testimony, the hearing officer concluded at step five that in light of his age, education, work experience, and residual functional capacity, Cohen could still perform other suitable jobs that exist in significant numbers in the national economy.  Id. at 17.  Consequently, the hearing officer concluded that Cohen was not disabled.  Id. at 18.

**V.   ANALYSIS**

  **A.   Evaluating Medical Opinions**

While the hearing officer is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion[,]" Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999), the hearing officer must weigh the evidence and resolve conflicts in the testimony, see Gonzalez Garcia v. Secretary of Health & Human Servs., 835 F.2d 1, 3 (1st Cir. 1987).

The Code of Federal Regulations ("the regulations"), however, differentiates between medical opinions and ultimate findings that are up to the Commissioner. The regulations state that the Commissioner has "final responsibility" for deciding the issues of whether a claimant's impairments meet the requirements in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1[2] ("the Listing(s)"), the residual functional capacity, or the application of vocational factors. 20 C.F.R. § 404.1527(e)(2) (citations omitted); Id. § 416.927(e)(2) (citations omitted). The regulations specifically state that the Commissioner "will not give any special significance to the source of an opinion" on these particular issues. Id. §§ 404.1527(e)(3), 416.927(e)(3).

For actual medical opinions, the hearing officer will

---

[2] For the sake of brevity, the memorandum will hereinafter refer to 20 C.F.R. Part 404, Subpart P, Appendix 1 as "Listing" followed by the relevant section number.

6

evaluate every medical opinion received, and unless granting a treating source's opinion controlling weight, the hearing officer must consider the examining relationship of the source, the treatment relationship, its supportability, consistency with the record, specialization of an expert, and other factors as needed. Id. §§ 404.1527(d), 416.927(d); Rosa v. Astrue, 783 F. Supp. 2d 179, 185-86 (D. Mass. 2011) (Gertner, J.).

### 1. Dr. Hymoff's Opinion

Dr. Hymoff, a medical expert and licensed clinical psychologist, testified at the hearing. Admin. R. 50-60, 141-45. Dr. Hymoff was not a treating physician and did not examine Cohen. Id. at 50. Based on the record evidence, his observations during the hearing, and questions he had posed to Cohen at the hearing, Dr. Hymoff opined that Cohen's activities of daily living, and his concentration, persistence, and pace, were moderately to markedly impaired, and that Cohen's social functioning abilities were markedly impaired.[3] Id. at 15. Dr. Hymoff also noted two episodes of decompensation, as indicated by doctors' comments in the record. Id. Dr. Hymoff testified that there was not a clear meeting of any Listing, but that the

---

[3] Medical consultants for the Commissioner evaluating mental limitations use a "Psychiatric Review Technique" that grades the degrees of functional limitations as "None, "Mild," "Moderate," "Marked," or Extreme." E.g., Admin. R. 343. Marked or Extreme limitations satisfy the criteria for disability under the Listings. Id.

7

combined impairments were "close to" a functional equivalent of a Listing.[4]  Id. at 59.  Dr. Hymoff ultimately concluded that "[t]here could be a functional limitation with the combined impairments."  Id. at 60.

The hearing officer considered Dr. Hymoff's testimony and gave it "some weight," but did not adopt it in its entirety.  Id. at 15.  In doing so, the hearing officer noted that Dr. Hymoff called the record "sparse and incomplete."  Id.  This Court determines, using the factors in 20 C.F.R. § 404.1527(d), that the record supports the hearing officer's determination of the weight given to Dr. Hymoff's opinion.  See id. at 15-16.  In the hearing, the hearing officer first established that Dr. Hymoff was not a treating or examining physician.  Id. at 50; see 20 C.F.R. § 404.1527(d)(1)-(2).  Dr. Hymoff himself testified that his opinion lacked adequate support.  Id. at 56 ("And the record is somewhat – I'm not going to say it's in conflict.  It's just not very complete in some ways."); see 20 C.F.R. § 404.1527(d)(3).  The hearing officer also explained, albeit

---

[4] The transcript recorded Dr. Hymoff stating, "Either one of [personality disorder and bipolar disorder] is well documented enough to be clear about meeting a listing, but both of them seem to be present."  Admin. R. 58.  In context, this appears to be a transcription error, meaning "neither" one of the disorders was clear enough to meet a Listing, an interpretation confirmed by Cohen's attorney's follow-up question.  Counsel asked "You said there's not a clear meeting of a listing here.  But in your opinion, is there a functional equivalent to a listing, given the combined impairments."  Id. at 59.  Hymoff answered, "Close to that, yes.  I think – that's how I was looking at it."  Id.

8

briefly, how Dr. Hymoff's conclusions about "moderate to marked" limitations were not consistent with the record or Cohen's testimony. Admin. R. 15. Taken together, substantial evidence supports the hearing officer's assessment of Dr. Hymoff's medical opinion.

Additionally, several of Dr. Hymoff's findings were issues reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(e)(3), 416.927(e)(3). Although Dr. Hymoff had an opinion about whether Cohen's impairments met the requirements of the Listings, Admin. R. 58-59, the final determination was up to the hearing officer. E.g., 20 C.F.R. § 404.1527. Similarly, the hearing officer was entitled to reject Dr. Hymoff's opinion of Cohen's residual functional capacity if based on substantial evidence. Admin. R. 15-16; see 20 C.F.R. § 404.1527(e)(3).

**2. The Listings**

The hearing officer's decision that Cohen's impairments did not meet the requirements of the Listings is supported by substantial evidence. Cohen does not dispute the hearing officer's finding that his physical impairments do not meet the Listings. See e.g., Pl.'s Mem. 9-10. Cohen was diagnosed with bipolar disorder (Listing 12.04), personality disorder (Listing 12.08), panic disorder (Listing 12.06), and substance abuse disorder (Listing 12.09). Admin. R. 10. Only Dr. Hymoff suggested that Cohen might meet the requirements for Listings

9

related to bipolar disorder and personality disorder.  Id. at 59-
60.  To meet the Listing for bipolar disorder, Cohen would need
to have two or more of the following: "Marked restriction of
activities of daily living;" "Marked difficulties in maintaining
social functioning;" "Marked difficulties in maintaining
concentration, persistence, or pace;" or "Repeated episodes of
decompensation, each of extended duration."  Listing 12.08B.

Dr. Hymoff found that Cohen had "moderate to marked"
restrictions or difficulties in two areas, and "probably marked"
difficulty in maintaining social functioning.  Admin. R. 58.
Although Dr. Hymoff noted evidence of two episodes of
decompensation, they did not meet the criteria for "repeated
episodes of decompensation, each of extended duration."[5]  Listing
12.00C(4).  Notably, Dr. Hymoff qualified all of his conclusions
regarding marked limitations.  E.g., Admin. R. 58 ("Again, I
would probably put that in a category probably to the moderate to
marked, but I'm not sure about that one.").  Most of Dr. Hymoff's
opinion about the applicability of the Listings placed Cohen's
functional limitations in the range of "moderate to marked."
Id. (stating that Cohen's limitations on daily living,
concentration, persistence and pace, and responding appropriately

---

[5] "The term repeated episodes of decompensation, each of
extended duration in [the] listings means three episodes within 1
year, or an average of once every 4 months, each lasting for at
least 2 weeks."  Listing 12.00C(4).

10

to supervision and coworkers were "moderate to marked"). Dr. Hymoff confirmed under questioning by Cohen's attorney that neither Cohen's bipolar disorder nor personality disorder alone was sufficient to meet the Listings requirements. Id. at 59. The strongest support for a finding of disability under the Listings was where Dr. Hymoff stated, "There could be a functional limitation with combined impairments." Id. Standing alone, these conclusions might be enough for a finding of disability, but the hearing officer was still entitled to weigh them against the other expert opinions as well as Cohen's testimony.

For example, two state agency reviewing psychological experts found that Cohen had no marked limitations. Id. at 343-65; 378. Moreover, Cohen testified that he could accomplish some activities of daily living. Id. at 11. As for his impairments in concentration, persistence, and pace, Cohen reported in December 2008 that he enjoyed reading and doing crossword puzzles, and his progress notes from January 2009 indicated that his concentration was fine. Id. Judith Kellmer, Ph.D. ("Dr. Kellmer"), one of the state agency reviewing psychological experts, also opined in February 2009 that Cohen could focus and concentrate at a consistent pace for short periods during a

11

normal workday.[6]  Id. at 11, 363-67.  Regarding Cohen's ability to maintain social functioning, the hearing officer considered Dr. Hymoff's testimony, along with Cohen's own testimony that he had learned to control his reactions, id. at 11, 55, and Dr. Kellmer's opinion that Cohen had only moderate impairments in this category, id. at 11, 368, 378.  Given this Court's affirmance of the hearing officer's weighing of Dr. Hymoff's medical opinion, the hearing officer's findings regarding the Listings also were supported by substantial evidence from the record.

    **B.**    **Vocational Expert Hypothetical**

Cohen next argues that the hearing officer failed to include all of his impairments in the hypothetical she presented to the vocational expert at the hearing.[7]  Pl.'s Mem. 13-15.  In order for a vocational expert's testimony to constitute substantial evidence, the vocational expert's opinion must be in response to a hypothetical that accurately describes the claimant's

---

[6] The hearing officer appears to have misspelled Dr. Kellmer's name as "Kellerman."  Admin. R. 11.

[7] The Court commends the hearing officer for consulting a vocational expert.  As this Court recently discussed in Pacensa v. Astrue, --- F. Supp. 2d ---, No. 11-10113-WGY, 2012 WL 993079, at *7-10 (D. Mass. Mar. 26, 2012), a vocational expert is advisable when evaluating nonexertional limitations like those in this case, see id. at 10 (remanding where hearing officer failed to consult a vocational expert to determine whether mental nonexertional limitations significantly reduced the occupational base of unskilled light work).

12

impairments. Arocho v. Secretary of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982); Aho v. Commissioner of Soc. Sec. Admin., slip copy, No. 10-40052-FDS, 2011 WL 3511518, at *7 (D. Mass. Aug. 10, 2011) (Saylor, J.) (stating that in a hypothetical to a vocational expert, the question "must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." (quoting Newton v. Chater, 92 F.3d 688, 694-95 (9th Cir. 1996))); Musto v. Halter, 135 F. Supp. 2d 220, 232 (D. Mass. 2001) (remanding where hypothetical did not include a specific restriction from the residual functional capacity).

Although the hearing officer's hypothetical question must describe the claimant's impairments, the hearing officer is not obligated to present impairments to the vocational expert that have been deemed not credible. Rossi v. Shalala, No. 95-1045, 66 F.3d 306, 1995 WL 568492, at *4 (1st Cir. Sept. 25, 1995) (unpublished table decision). In general, a hypothetical is appropriate if the question accurately reflects the objective medical findings in the record. E.g., Perez v. Secretary of Health and Human Servs., 958 F.2d 445, 447 (1st Cir. 1991) (concluding there was substantial evidence when as part of the hypothetical, the hearing officer read aloud the medical expert's findings to the vocational expert); Haidas v. Astrue, No. 08-11274-MLW, 2010 WL 1408618, at *5 (D. Mass. Mar. 31, 2010) (Wolf,

C.J.) (citing <u>Arocho</u>, 670 F.2d at 375) (concluding there was substantial evidence when the hypothetical included the specific medical diagnosis).

In this case, the hearing officer presented to the vocational expert a hypothetical person of Cohen's age, education, and work background, who is limited to carrying ten to twenty pounds, can stand and walk for six hours a day, can do occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and can work in a job where he would have a relatively independent role, requiring only occasional interaction with others. Admin. R. 61-62. The hearing officer also asked for unskilled jobs. <u>Id.</u> at 63.

Cohen acknowledges that this hypothetical addressed the impairment in his ability to function socially, which the hearing officer found to be moderate. Pl.'s Mem. 11; <u>see</u> Admin. R. 12 (finding that Cohen "can work in an independent role requiring only occasional contact with supervisors, co-workers, and the general public"). Cohen argues, however, that the hypothetical did not address his impairments in maintaining the activities of daily living, and in his concentration, persistence, and pace. Pl.'s Mem. 13-14.

### 1. Restrictions on Daily Living

At step five, the hearing officer found Cohen has "some limitations of daily living," but that the impairments were not

marked.  Admin. R. 15.  In reaching this conclusion, the hearing
officer determined that Cohen's testimony regarding limitations
was not credible to the extent it conflicted with the residual
functional assessment, and noted that Cohen reported
participating in a range of basic activities of daily living,
including looking for employment, cooking, cleaning, and
occasionally shopping and driving.  Id. at 13-14.  The hearing
officer also noted that Dr. Hymoff, a psychology consultant,
found that Cohen's daily activities were moderately to markedly
limited.  Id.  Consistent with this evidence, the hearing officer
concluded at step three that "with respect to activities of daily
living, [Cohen] has moderate restrictions."  Id. at 11.

Nonetheless, the hearing officer did not include any mental
limitation on daily activities in the hypothetical posed to the
vocational expert.[8]  Id. at 61-62.  While the hearing officer
included the "moderate limitation" on social functioning in the
hypothetical, she omitted to include the moderate restrictions on
daily activities.  Id.

"[T]he hypothetical posed to a [vocational] expert must
include all of the claimant's relevant impairments."  Aho, 2011
WL 3511518, at *7 (citing Rose v. Shalala, 34 F.3d 13, 19 (1st

---

[8] Cohen does not challenge whether the hearing officer properly accounted for his physical limitations on daily living (bending and lifting) in the hypothetical posed to the vocational expert.  Admin. R. 11, 12-16.

15

Cir. 1994)). Here, the hearing officer's question specifically mentioned limitations on social functioning, but did not incorporate other testimony from the hearing or any other aspect of mental limitations. Admin. R. 61-62; cf. Perez, 958 F.2d at 447 (noting the hearing officer read aloud medical findings for the hypothetical). Absent this information, the hearing officer's hypothetical was insufficient and the vocational expert's testimony could not be the substantial evidence necessary to meet the Commissioner's burden of showing a significant number of jobs in the national economy that Cohen can perform. See Torres v. Secretary of Health & Human Servs., 976 F.2d 724, No. 92-1460, 1992 WL 235535, at *5 (1st Cir. Sept. 23, 1992) (unpublished table decision) (citing Arocho, 670 F.2d 372)).

### 2. Restrictions on Concentration, Persistence and Pace

As for Cohen's impairments in concentration, persistence, and pace, the hearing officer found at step five that Cohen could focus and concentrate at a consistent pace for short periods during a workday, Admin. R. 11, and concluded that "the claimant can maintain sufficient concentration, persistence and pace," id. at 15. The hearing officer based this on Cohen's testimony that he watched television or used a computer for several hours a day, and could read a newspaper for up to one hour without difficulty. Id. at 14. Yet at step three, the hearing officer determined

16

that "[w]ith respect to activities of concentration, persistence or pace, the claimant has moderate difficulties."[9] Id. at 11.

Again, the hypothetical posed to the vocational expert omitted the moderate restrictions of concentration, persistence and pace that the hearing officer found at step three and discussed at step five. Id. at 11; id. at 15 ("Although the record shows that claimant has some limitations in activities of daily living and concentration, persistence and pace, it does not appear that in the absence of drug abuse, these impairments are marked.").

Accordingly, this Court holds that the hypothetical upon which the vocational expert based her opinion did not reflect the hearing officer's residual functional capacity in the absence of some limitation of concentration, persistence or pace. See Dorego v. Astrue, slip copy, No. 10-11768-DPW, 2012 WL 603196, at *13 (D. Mass. Feb. 24, 2012) (Woodlock, J.) (approving hypothetical that explicitly included the "moderate limitation in concentration, persistence and pace" from the claimant's residual functional capacity). The Court does not question the hearing officer's determination of the significance of Cohen's "moderate"

---

[9] Inexplicably, the hearing officer cited Dr. Kellmer's testimony at step three in refuting Cohen's testimony and then discredited the same testimony by Dr. Kellmer at step five, stating that the opinion merits "little or no weight based on more current information as well as the medical expert's testimony." Admin. R. 11, 15.

limitation, but surely that limitation, as reflected in the hearing officer's written decision, is not the equivalent of no limitation at all. See Admin. R. 11-15.

**C. Due Process Claim**

Cohen also contends that the hearing officer violated due process by failing to notify his attorney that Dr. Hymoff's opinion would not be adopted in full. Pl.'s Mem. 12-13. Without launching into an in-depth discussion of due process, Cohen's attorney had an opportunity to ask Dr. Hymoff to clarify or support his opinion, but asked only one question in response to his testimony. Admin. R. 59-60. It is simply not a due process violation when the hearing officer weighs the evidence in a manner that Cohen finds disagreeable.

**VI. CONCLUSION**

For the reasons stated above, this Court DENIES Cohen's motion to reverse, and GRANTS Cohen's motion to remand, ECF No. 8, and DENIES the Commissioner's motion for an order affirming his decision, ECF No. 10. Pursuant to 42 U.S.C. § 405(g), this matter is hereby remanded for good cause to the agency for further proceedings consistent with this opinion. Unlike Rossi v. Shalala, the hearing officer here made credibility determinations that Cohen had moderate limitations, and therefore was "obligated to present those to the [vocational expert.]" 1995 WL 568492, at *4

**SO ORDERED.**

                                                 /s/ William G. Young  
                                                 WILLIAM G. YOUNG  
                                                 DISTRICT JUDGE